UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

September 14, 2021

LETTER TO COUNSEL

RE:   *Latonya W. v. Kijakazi*
      Civil No. SAG-20-1413

Dear Counsel:

On June 3, 2020, Plaintiff Latonya W. petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for Disability Insurance Benefits and Supplemental Security Income. ECF No. 1. I have considered the parties' cross-motions for summary judgment, supporting memoranda, and Plaintiff's reply. ECF Nos. 14, 19, 20. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff filed her claims for benefits on April 1, 2016, alleging in each a disability onset date of December 21, 2015. Tr. 186, 188. Her claims were denied initially and on reconsideration. Tr. 81-82, 99-100. A hearing was held on January 11, 2019, before an Administrative Law Judge ("ALJ"). Tr. 33-66. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 13-32. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA.

The ALJ found Plaintiff suffered from the severe impairments of "personality disorder, schizophrenia, posttraumatic stress disorder (PTSD), bipolar I disorder, and agoraphobia with panic disorder." Tr. 19. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she retains the ability to concentrate, persist, and stay on pace with regard to performing simple 1-4 step, routine, repetitive tasks where such work is performed in a low stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there

>would only be occasional contact with coworkers and supervisors and no contact with the general public, and which would not require a fast pace or production quotas such as would customarily be found working on an assembly line.

Tr. 21.  After considering the testimony of a vocational expert ("VE"), the ALJ determined that plaintiff could not perform her past relevant work as a cashier or a waitress, but that she could perform other jobs existing in significant numbers in the national economy. Tr. 26-27.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 27.

Plaintiff raises two arguments on appeal: (1) the ALJ failed to follow the treating physician rule, and (2) the ALJ failed to properly evaluate Plaintiff's subjective statements about her symptoms.  ECF No. 14-1 at 16-25.  I agree, to the extent described below.  In remanding for further explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

"[T]he treating physician rule is well-established." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 106 (4th Cir. 2020).  It "requires that ALJs give 'controlling weight' to a treating physician's opinion on the nature and severity of the claimant's impairment if that opinion is (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and (2) 'not inconsistent with the other substantial evidence' in the record." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). [1]  Should an ALJ decide that a treating physician's opinion is not entitled to controlling weight, the ALJ must still determine the appropriate weight to assign the opinion by considering several factors, including whether and to what extent the author of the opinion examined or treated the claimant, the supportability and consistency of the opinion, the author's specialization, and any other factor that is relevant given the facts and circumstances of the case. *Id.*; 20 C.F.R. §§ 404.1527(c), 416.927(c).

In this case, the ALJ gave the opinion of Plaintiff's treating psychiatrist, Dr. White, little weight:

>The undersigned has given little weight to Dr. White's October 2018 mental functional capacity assessment because the marked and severe limitations assessed by Dr. White and the opinion that the claimant's mental impairments impede her ability to perform any work-related duties are not supported by Dr. White's own treatment notes or by other medical and non-medical evidence in the record.  Dr. White's mental status examination on the same date as the opinion revealed fair memory, attention span, concentration, judgment, and insight, euthymic mood, appropriate affect, logical/coherent though process, and appropriate thought content.  These findings are not consistent with marked and severe limitations.  Furthermore, the claimant reported good activities of daily living, including

---

[1] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017.  It was replaced by § 404.1527c for claims filed on or after March 27, 2017.  Plaintiff's claim was filed in 2016.  Tr. 186, 188.

*Latonya W. v. Kijakazi*
Civil No. SAG-20-1413
September 14, 2021
Page 3

>       babysitting a seven-year-old child since summer 2018, which is inconsistent with
>       the degree of limitation assessed by Dr. White.

Tr. 25.  Plaintiff argues the ALJ erred in finding the other evidence of record, including Plaintiff's activities of daily living, contradicted Dr. White's opinion and in substituting his own opinion for that of Dr. White's.  ECF No. 14-1 at 16-20.  The Commissioner argues the ALJ complied with the treating physician rule or that, alternatively, Plaintiff has failed to demonstrate harm in the ALJ's error.  ECF. No. 19-1 at 4-7.  The Commissioner also argues other evidence contradicting Dr. White's opinion existed in the record, although the Commissioner does not cite to any.  *See id.*

I agree with Plaintiff that the ALJ erred in evaluating Dr. White's opinion.  Even if the Commissioner is correct that the opinion is not entitled to controlling weight, the ALJ erred in evaluating the weight to which the opinion was entitled.  The ALJ discussed only a single treatment note in finding Dr. White's treatment notes did not support her opinion despite the fact that Dr. White's other treatment notes identify Plaintiff's condition as severe, *see, e.g.*, Tr. 1114, and document Plaintiff's shifting mental state, *see, e.g.*, Tr. 1127-28 (noting Plaintiff's self-harm, which related to the voices she heard, and also noting Plaintiff "admit[ted] that mood can switch to her wanting to clean up all day and no [sic] sleep at night").  The error is particularly harmful because the ALJ found Plaintiff suffered from the severe impairments of schizophrenia and bipolar I disorder, conditions which vary significantly over time.  Tr. 19.

The ALJ likewise focused on one aspect of Plaintiff's activities of daily living to find the opinion inconsistent with the other evidence of record.  However, the ALJ improperly characterized the nature and extent of Plaintiff's babysitting.  At the hearing, Plaintiff and the ALJ discussed the extent of Plaintiff's babysitting, which she began in the summer of 2018.  Tr. 47.  Plaintiff testified that she babysat Monday through Friday from six in the morning until five in the evening.  Tr. 47.  She testified that she did not get paid for the babysitting.  Tr. 51.  She testified that the child is seven years old, that she does not change diapers, that she does not give him medicine, and that she had the phone number of the child's mother if she had an issue.  Tr. 48.  She agreed that she "ma[d]e him a little snack or something."  Tr. 48.  She testified that she has had no problems with the child and that "he's pretty quiet, into himself" and "watches TV most days."  Tr. 53.  The child does not attend school.  Tr. 48.  Significantly, her godmother, with whom Plaintiff lives, babysits with her.  Tr. 56.  Plaintiff testified that there have been times when she had to step away from the child and leave him with her godmother.  Tr. 56.  She also testified that if she has a flashback, including when she is babysitting the child, she "might have a violent outburst or . . . might just like just shut down, one of the two can happen."  Tr. 56.  Indeed, this exact same behavior underpins Plaintiff's dismissal from her three most recent jobs.  She reported her last three jobs ended because (1) she had flashbacks and "got so frustrated that [she] just left and never went back," (2) "had a violent outburst with a customer," and (3) was so depressed she "stopped getting out of bed and . . . just stopped doing everything."  Tr. 41-46.  The record thus does not support ALJ's summation of Plaintiff's babysitting as "good activities of daily living." *See* Tr. 25.  While the Commissioner argues the ALJ used babysitting as only one example, she does not identify which other activities of daily living the ALJ may have been referring to or cite to any other evidence contradicting Dr. White's opinion.

*Latonya W. v. Kijakazi*
Civil No. SAG-20-1413
September 14, 2021
Page 4

The ALJ cited no other reasons for assigning little weight to the opinion. I therefore disagree with the Commissioner that the ALJ "provided ample, well-supported reasons while discounting the opinion." *See* ECF No. 19-1 at 6. The regulations clearly establish a scheme in which an ALJ should first determine whether an opinion is entitled to controlling weight and second determine what weight an opinion not entitled to controlling weight should be accorded. Here, the ALJ provided only two unsupported reasons for giving the opinion very low weight. Remand is therefore necessary.

Plaintiff additionally argues that the ALJ erred in assessing the consistency of her symptoms and the overall record. She particularly challenges the ALJ's findings with respect to the effectiveness of her medications and the significance of her activities of daily living. I agree. The ALJ's discussion of Plaintiff's activities of daily living is deficient for the reasons identified above. With respect to Plaintiff's medication, in this case, the ALJ found "the medical record shows that medication is generally effective in reducing [Plaintiff's] symptoms." Tr. 23. The ALJ, however, failed to adequately explain his conclusion with respect to the effectiveness of Plaintiff's medications or her ability to comply with her treatment.

An ALJ properly considers whether medication is effective at managing a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). It is also true that a claimant's lack of compliance with medication can be an acceptable basis for finding a claimant not disabled. 20 C.F.R. §§ 404.1530(b), 416.930(b) ("[i]f you do not follow the prescribed treatment without good reason, we will not find you disabled"); *see also, e.g.*, *Dunn v. Colvin*, 607 F. App'x 264, 275-76 (4th Cir. 2014) (finding an ALJ properly considered a claimant's medication noncompliance in her credibility determination because the claimant reported fear of weight gain and inability to pay, without pursuit of purchasing assistance, caused her noncompliance). However, a claimant must be afforded an opportunity to provide "good reason," and that process may properly lend insight into the claimant's credibility. SSR 96-7p, 1996 WL 374186 (July 2, 1996). Thus, the mere existence of some evidence of noncompliance does not on its own permit a finding that Plaintiff is less than credible, intentionally noncompliant, or suffering symptoms less serious than described:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at an administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue in a consistent manner.

*Id.* Here, the ALJ noted that "the medical record documents several instances of medication noncompliance and several gaps in treatment, during which [Plaintiff] was without medication." Tr. 23. The ALJ noted that Plaintiff "had a panic attack after taking a new medication." Tr. 22. The ALJ noted that Plaintiff did "not allege side effects from her medications, but she did report

*Latonya W. v. Kijakazi*
Civil No. SAG-20-1413
September 14, 2021
Page 5

anxiety with taking new medications." Tr. 23. The ALJ acknowledged that Plaintiff reported to her psychiatrist that she vomited after taking her medication. Tr. 24. The ALJ's analysis fails to elucidate his conclusions with respect to Plaintiff's ability to comply with her medication regimen or her possible "good reasons" for failing to take her medication.

The record contains numerous examples of the difficulties Plaintiff faces with respect to her severe mental impairments and her medication compliance. For example, in July 2018, Plaintiff's psychiatrist entered the following treatment note:

> She returns for [a] regular [appointment] but admits that she stopped the medication after 1-2 days because she did not feel that it was helping. Today she feels like her life is stuck and not getting better with a job/she feels like a teenager instead as a [y]oung adult at 28 [years old]. She was given more information about the need for medication—she also reports some vomiting—so she stopped—she agrees to try it again and took the medication in the office—will resume [T]rileptal, Lexapro[,] and [A]bilify.

Tr. 483. Plaintiff called her psychiatrist about two hours later and reported "that medication caused her to vomit, diarrhea[,] and feel panicky." She also reported that she had "some concerns about the Lexapro or Abilify causing side effects." Tr. 481. The cyclical relationship between medication compliance and functioning may be particularly problematic for a claimant such as Plaintiff, who the ALJ found was moderately limited in concentration, persistence, or pace. *See* Tr. 21. SSA considers the functional area of concentration, persistence, or pace to refer to:

> the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: *initiating and performing a task that you understand and know how to do*; working at an appropriate and consistent pace; *completing tasks in a timely manner*; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; *sustaining an ordinary routine and regular attendance at work*; and working a full day without needing more than the allotted number or length of rest periods in a day.

20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(E)(3) (emphasis added).[2] The ALJ's findings as to Plaintiff's moderate inability to concentrate, persist, or maintain pace undermine his implication that Plaintiff is capable of working so long as she takes her medications. At a bare minimum, the two findings require the ALJ to build some logical connection between the notion that Plaintiff experiences difficulty persisting but can manage her mental health by regularly taking her prescribed medications, the effectiveness of which depends upon sustained and consistent compliance. Thus, while the ALJ apparently found Plaintiff's medication compliance relevant,

---

[2] The paragraph B criteria "represent the areas of mental functioning a person uses in a work setting." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(A)(2)(b). Because regular medication compliance mirrors consistent task completion, a comparison is appropriate.

*Latonya W. v. Kijakazi*
Civil No. SAG-20-1413
September 14, 2021
Page 6

how it might be relevant in the context of her limited ability to concentrate, persist, or maintain pace is left unexplained.

Ultimately, the ALJ's evaluation of Plaintiff's mental impairments lacks substantial evidence. It also does not provide the required logical bridge between the evidence of record and his ultimate conclusion. Accordingly, remand is appropriate.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 14, is DENIED and Defendant's Motion for Summary Judgment, ECF No. 19, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing order follows.

        Sincerely yours,

        /s/
        Stephanie A. Gallagher
        United States District Judge